IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00368-O |
| | § | |
| $21,255 IN U.S. CURRENCY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Motion for Default Judgment and Final Judgment of Forfeiture (the "Motion") (ECF No. 29), which United States District Judge Reed O'Connor referred to the undersigned. ECF No. 30. After considering it, the record, and the applicable legal authorities, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motion and **ENTER default judgment** in favor of the government as explained below.

**I.   BACKGROUND**

This is a forfeiture case involving money seized as part of an investigation of a conspiracy among Robert Harris, Jr. ("Harris"), Audrey Anissa Wilford ("Wilford"), and others to possess methamphetamine with the intent to distribute it. ECF No. 15. On October 14, 2020, Drug Enforcement Administration agents and Arlington Police Department officers went to Harris' and Wilford's residence to execute a federal arrest warrant. *Id.* at 8. There they observed narcotics in plain view in the residence, and asked Harris and Wilford for consent to search the residence based on the discovery of the drugs. *Id.* at 9-10. Harris and Wilford consented, and law enforcement officers searched the residence, where they found and seized 30.1 grams of cocaine and 96.7 grams

of methamphetamine. They also found and seized $21,255.00 in U.S. currency (the "Defendant Property"). *Id.* at 9.

On April 29, 2022, the United States filed its Verified Complaint for Forfeiture *in rem*, claiming that the Defendant Property should be forfeited to the federal government "because it is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846." ECF No. 1 at 1; *see generally Waterloo Distilling Corp. v. United States*, 282 U.S. 577, 581 (1931) (In an *in rem* forfeiture proceeding, "[i]t is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient."). On May 4, 2022, the United States posted notice of the pendency of this forfeiture action on an official government internet site and sent direct notice of the forfeiture complaint to Harris and Wilford, the "only persons known to the government who reasonably appeared to be potential claimants to the" Defendant Property. ECF No. 29 at 1, 2.

The government amended its complaint on September 9, 2022, and Wilford filed an answer on October 25, 2022. ECF Nos. 15, 19. Only Wilford has answered the complaint. The government and Wilford entered into a settlement agreement, in which Wilford agreed to the full and complete forfeiture of $17,255.00 of the Defendant Property (the "Forfeited Property") to the United States, in exchange for the government returning the remaining $4,000.00 of the Defendant Property to Gwendolyn Wheeler. ECF No. 24.

On March 26, 2024, the Clerk of Court entered default against Harris "and all other persons and entities," except for Wilford. ECF No. 28. The United States filed the Motion on June 5, 2024, seeking default judgment against Harris and "all other persons and entities," except Wilford. ECF No. 29 at 3; *see generally United States v. 51 Pieces of Real Prop. in Roswell, N.M.*, 17 F.3d 1306,

1309 (10th Cir. 1994) ("The exercise of in rem jurisdiction in a civil forfeiture case permits the court to adjudicate the rights of the government to the property as against the whole world.").

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. A default occurs "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The Clerk "must enter the party's default" when it is "shown by affidavit or otherwise." *Id.* The party seeking judgment must then apply for a default judgment from the Court. *See id.* (b)(2). The applicant must show: (1) default was entered; (2) the defaulting party is neither a minor nor incompetent person; (3) the defaulting party is not in military service; and (4) if the defaulting party has appeared, that it received notice of the application. *See id.*; 50 U.S.C. § 3931.

The Court may enter a default judgment only if there is a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (footnote omitted). The pleadings are sufficient if they satisfy Federal Rule of Civil Procedure 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu*, 515 F.2d at 1206 (collecting cases). But the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

Entering default judgment lies within the court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). "Default judgments are a drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnote omitted). Courts therefore exercise their discretion with attention to six factors,

3

considering whether: (1) a good-faith mistake or excusable neglect caused the default; (2) a default judgment would be harsh; (3) substantial prejudice has occurred; (4) there are material issues of fact; (5) the grounds are clearly established for default; and (6) the Court would feel obligated, upon the defendant's motion, to set aside the default. *Lindsey*, 161 F.3d at 893.

### III. ANALYSIS

#### A. Default judgment is procedurally warranted.

The government asserts that Harris is not a juvenile, incompetent, or a service member, and the Court has no evidence to the contrary. *See* ECF No. 27-1. Further, although the government does not move for a default judgment against Wilford, it has entered a settlement agreement with her, which the government's proposed judgment recognizes. ECF Nos. 24; 29-1. Thus, there are no partial default concerns. The Court finds that it need not hold a hearing on this matter. *See* Fed. R. Civ. P. 55(b)(2) ("The Court *may* conduct hearings[.]" (emphasis added)). The Court therefore turns to the *Lindsey* factors and finds that they all support default judgment. *See* 161 F.3d at 893.

First, no material issues of fact remain on the government's claims. Neither Harris, nor any other potential claimant against whom the government seeks default, filed any pending claims or hearing requests. Second, nothing here shows that the "substantial prejudice" requirement undermines the government's entitlement to default judgment. *See Lindsey*, 161 F.3d at 893. The third and fourth factors also support default judgment because the government has clearly established the grounds of Harris's and other potential claimant's default, and nothing suggests that their default was due to "a good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. To date, Harris and the other potential claimants have failed to file any pleadings with the Court, despite having abundant opportunities to do so. Accordingly, the fifth factor supports

default judgment, as a judgment by default is not too harsh when the defaulting party has had every opportunity to plead its cause but did not do so. *Id.*

Finally, given the clear satisfaction of the above elements, nothing indicates that the Court would "be obliged to set aside the default" upon motion from any party, including Wilford, who has entered a settlement agreement. *See id.*; *see also Moreno v. LG Elecs.*, 800 F.3d 692, 698 (5th Cir. 2015) (noting district courts are not obliged to set aside a default upon defendant's motion where "the default was willful, the plaintiff will be prejudiced, or the defendant has no meritorious defense"); *United States v. 2430 Gibbs Williams Rd.*, No. 3:15-cv-3996-L-BK, 2017 WL 744687, at *2 (N.D. Tex. Feb. 6, 2017) (recognizing default occurred where only claimants were taxing authorities who had reached joint stipulation with government). Thus, no unresolved claims or answers exist in the record to date, and entry of default is proper.

With each of the six *Lindsey* factors supporting default judgment, the government's claims survive the step-one analysis. *See Morelia*, 126 F. Supp. 3d at 813. At step two, the Court must examine the substantive merits of the government's claims and determine whether the pleadings establish a sufficient basis for default judgment on each. *See Nishimatsu*, 515 F.2d at 1206. The Court finds that they do.

      **B.**      **The pleadings establish a sufficient basis for default judgment.**

The Motion seeks default judgment against Harris, and "all other persons and entities" except for Wilford. ECF No. 29. As the parties against whom the government seeks default judgment have not appeared, the United States need not provide any additional notice before the Court may enter judgment. *See* Fed. R. Civ. P. 55(b)(2). Because the government has posted notice of its complaint and only Wilford has filed a claim, the Court deems the government's well-pleaded

allegations admitted as to Harris and every other potential claimant besides Wilford. *See Wooten*, 788 F.3d at 499.

In a civil forfeiture proceeding, the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions inform the Court's default-judgment analysis. *See United States v. 2000 Mercedes S430*, No. 3:08-cv-0194-M, 2009 WL 6312499, at *1 (N.D. Tex. Sept. 2, 2009) ("Effective December 1, 2006, Rule G of the Supplemental Rules governs all forfeiture actions *in rem* arising from federal statutes."), *rec. adopted*, 2010 WL 1239896 (N.D. Tex. Mar. 29, 2010). To properly seek forfeiture, the government's complaint must:

> (a) be verified;
>
> (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;
>
> (c) describe the property with reasonable particularity;
>
> (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;
>
> (e) identify the statute under which the forfeiture action is brought; and
>
> (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Fed. R. Civ. P. Supp. R. G(2). Here, the complaint is (a) verified by a special agent; (b) properly alleges the grounds for subject-matter jurisdiction, in rem jurisdiction, and venue; (c) describes the property with reasonable particularity; (d) states the original and current locations of the currency; (e) identifies the statute under which this forfeiture action is brought; and (f) sufficiently states detailed facts to support a reasonable belief that the government could meet its burden of proof at trial. ECF No. 15.

As to the final factor, the government would have to show at trial "by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1); *see* Supp. R. G(2)(f). Property "is subject to forfeiture if it constitutes 'moneys . . . furnished . . . in exchange for a

controlled substance' in violation of specified federal laws." *United States v. $397,025 in U.S. Currency*, No. 3:22-cv-01088-X, 2022 WL 17406316, at *2 (N.D. Tex. Dec. 1, 2022) (quoting 21 U.S.C. § 881(a)(6)). "A claimant could contest forfeiture by demonstrating 'an interest in the seized item.'" *Id.* (quoting *United States v. Real Prop. Located & Situated at 404 W. Milton St.*, 650 F. App'x 233, 235 (5th Cir. 2016) (cleaned up)). And "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3); *see also 2430 Gibbs Williams Rd.*, 2017 WL 744687, at *3.

Here, none of the parties against whom the government seeks a default judgment have demonstrated an interest in the currency, and the government has offered sufficient evidence that the currency is forfeitable as being money exchanged for a controlled substance. Wilford and Harris were involved in drug trafficking, and the government discovered the Defendant Property near cocaine and methamphetamine that, "[i]n the training and experience of officers . . . far exceeded a typical user quantity and was indicative of distribution." ECF No. 15 at 9-10, 11-13. Moreover, Wilford's financial circumstances in the months leading up to the seizure of the Defendant Property are incongruent with over $20,000.00 of cash being found in her residence. *Id.* at 19-23. Thus, the government has provided sufficient evidence supporting a reasonable belief that it could meet its burden of proof at trial.

## IV. CONCLUSION

Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motion (ECF No. 29). The undersigned also has reviewed the government's proposed Default Judgment and Final Judgment of Forfeiture (ECF No. 29-1) and finds it consistent with the legal

authorities discussed above. Accordingly, the undersigned also **RECOMMENDS** that the Court enter judgment in a form substantially similar to the proposed judgment (ECF No. 29-1).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on July 31, 2024.

                                                                       _____
                                                                       Hal R. Ray, Jr.
                                                                       UNITED STATES MAGISTRATE JUDGE